Yok T. JUNG, Appellant/Cross–Appellee,

v.

Wee G. JUNG, Appellee/Cross–Appellant,

and

Bow G. Jung, Appellee.

Nos. 99–CV–596, 99–CV–872.

District of Columbia Court of Appeals.

Argued Nov. 20, 2001.
Decided Feb. 7, 2002.

---

Leonard L. Long, Washington, DC, for Yok T. Jung, appellant and appellee.

John Jude O'Donnell, Washington, DC, with whom Michele L. Bulger, Rockville, MD, was on the brief, for Bow G. Jung, appellee.

Geoffrey S. Gavett, with whom Rhoda S. Barish, Rockville, MD, was on the brief, for Wee G. Jung, appellant and appellee.

Before TERRY, FARRELL, and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

These cross-appeals are the culmination of acrimonious family disputes, some of which the participants chose to record on tape, that ensued following the intestate death of Lew Gin Gee Jung. The decedent's children initially agreed that her daughter, Yok T. Jung, would purchase Lew Gin Gee Jung's home from her Es-tate, but a dispute erupted between Yok and her brothers, Bow G. Jung and Wee G. Jung, over how much Yok would have to pay.[1] The discord between Yok and her brothers also extended to whether Yok was withholding information concerning bank accounts in the name of the decedent to which Yok, alone of the siblings, was a signatory. These disagreements as to the distribution of Lew Gin Gee Jung's estate eventually were resolved in probate proceedings which now are concluded.[2] However, Yok filed a separate civil suit against Bow and Wee in Superior Court, charging them with intentional infliction of emotional distress stemming from their arguments with her over the disposition of their mother's estate.

At the trial of this tort action, the court entered judgment as a matter of law against Yok and in favor of Bow and Wee. On appeal, Yok challenges that ruling, as well as an earlier ruling in the case that sanctioned her for withholding discovery. The trial court denied Wee's post-trial motion for an award of attorney's fees as a sanction against Yok for litigating against him in bad faith. In his cross appeal, Wee asks this court to review that denial.

We affirm both the rulings against Yok. We remand the case for the trial court to explain—or if it chooses, to reconsider and modify—its decision on Wee's attorney's fees request.

## I. Discovery Sanctions

Pretrial discovery is intended to operate via the parties' voluntary cooperation with a minimum of judicial oversight, and consequently, it is vulnerable to parties who choose to employ obstructive tactics in bad faith. The subversion of the

---

1. For ease of reference, this opinion will refer to the parties to this appeal as "Yok", "Bow", and "Wee."

2. This court affirmed the probate court's rulings in an unpublished opinion in *In re Estate of Lew Gin Gee Jung*, No. 97–PR–166, —— A.2d —— (June 6, 2000).

discovery process by such means seriously harms the administration of justice. When discovery abuses come to the attention of the judge, the judge has a duty to take proportionate and effective countermeasures. For that purpose, Super. Ct. Civ. R. 37 permits the trial court to select from a range of sanctions, including the award of attorney's fees and expenses, the preclusion of claims or defenses, and the dismissal of an action or the entry of a judgment of default. *See Perry v. Sera,* 623 A.2d 1210, 1218 (D.C.1993). "[T]he decision to impose discovery sanctions is left to the 'broad discretion' of the trial court," and this court "will reverse only if the trial court abuses its discretion by imposing a penalty too strict or unnecessary under the circumstances." *Lyons v. Jordan,* 524 A.2d 1199, 1201 (D.C.1987).

■ In deciding to impose discovery sanctions, the motions judge found that this case was "marked by plaintiff's [i.e., Yok's] extreme tardiness in providing even incomplete discovery responses coupled with plaintiff's refusal to comply with court ordered discovery obligations." The judge noted that Yok exacerbated this pattern of obstruction by her "habit of filing frivolous motions for protective orders the day after responses were due, or the day after a deposition was scheduled." A few examples will serve to illustrate the aptness of these observations.

Yok and her counsel repeatedly failed to appear for her properly noticed deposition, even after the motions judge ordered her to make herself available. As well, Yok for months failed to respond to the defendants' interrogatories and document requests—again, even after the judge ordered her to do so. When Yok did respond, she answered evasively. Asked about her allegation that Bow tortiously pressured her to add his name to Estate bank accounts on which she was the sole

signatory, Yok professed to be unable to identify the accounts or to specify what Bow did. Not unreasonably, the motions judge found that Yok's response failed to provide Bow "with information necessary to defend himself against her allegation." To interrogatories concerning her damages, Yok answered—unresponsively and inaccurately—that her attorney already had provided the information. Asked to describe the factual basis for her punitive damages claim, Yok's entire response was "My lawyer decided to claim punitive damages." Questioned about the medical problems and wage loss that she attributed to the defendants' intentional infliction of emotional distress, Yok provided answers that were confusing and, in the words of the motions judge, "woefully incomplete." The judge concluded that "the paucity" of Yok's answers did not leave Bow and Wee "in an adequate position to differentiate what portion of [Yok's] medical claims may in fact be the result of a pre-existing medical condition."

Stating that he would have been "fully justified in dismissing the complaint with prejudice at this point," the motions judge instead chose to impose lesser, though still meaningful, sanctions. Focusing "on the subjects where discovery remain[ed] deficient," the judge precluded Yok from introducing evidence at trial in support of her allegation that Bow forced her to add his name to Estate bank accounts. The judge also struck Yok's medical and lost wages claims and her claim for punitive damages. In addition, the motions judge awarded Bow and Wee the verified attorney's fees and costs, amounting to $12,320, that they incurred in attempting to obtain discovery from Yok.

In our view, the motions judge exercised his discretion appropriately. He did not act precipitately, but gave Yok opportunities, which she failed to take, to remedy

her discovery violations and avoid the necessity for sanctions. The time had come for the judge to take effective corrective action in the interests of justice—the violations merited sanctions. The sanctions that the judge imposed were not excessive. They did no more than redress the injury to Bow and Wee that Yok's discovery violations caused. Yok has not persuaded us that she is entitled to relief.

## II. Judgment as a Matter of Law

■■■ "To establish a claim for intentional infliction of emotional distress, a plaintiff must prove that the defendant engaged in: (1) extreme and outrageous conduct that (2) intentionally or recklessly caused (3) severe emotional distress to another." *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 934–35 (D.C.1995). Conduct does not rise to the level of being either extreme or outrageous if it consists of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C.1980) (citation omitted). Rather, intentional infliction of emotional distress liability attaches "only when the conduct goes beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community." *Id.* (internal quotation marks omitted).

■■■ Yok charged that Bow and Wee intentionally inflicted emotional distress on her in the following ways. First, Yok claimed that Bow threatened her life when, during a heated family meeting that was recorded on tape, he stated, "Okay. We're going to bring the tape to the lawyer. We're going to hire the lawyer. Then we['ll] see what we can do. That['s] something we can do. Let's just fight till the death, to the death. Okay. Let's go."

Second, Yok claimed that Bow threatened her with false criminal charges and the loss of her job when he warned her what could happen if she concealed their mother's assets and defrauded the Estate. Yok asserted that Wee agreed with Bow's threatening statements, apparently because Wee heard the statements and did not disassociate himself from them. Finally, Yok claimed that Wee himself caused her distress when he demanded (apparently on the advice of counsel) that she add his name to Estate bank accounts under her control so that he could serve as a joint personal representative.[3]

The trial judge entered judgment as a matter of law for Bow and Wee on these claims under Super. Ct. Civ. R. 50. Viewing the evidence in the light most favorable to Yok, the judge concluded, and we agree, that no reasonable jury could have found that her brothers' conduct was extreme and outrageous, that they intended to cause her severe emotional distress, or that they were reckless in acting as they did. *See Railan v. Katyal*, 766 A.2d 998, 1006 (D.C.2001). In context, *see Jonathan Woodner Co.*, 665 A.2d at 935, the "fight till the death" language was not a death threat, but a metaphor, and no reasonable person could have thought otherwise. Similarly, Bow's other statements were not threats, but simply warnings of the potential consequences for Yok if she engaged in fraudulent concealment of assets. Finally, while Yok may have been offended by Wee's insistence that he be added as a signatory on Estate bank accounts, she offered no evidence that his demand was unreasonable, that he pressed it for an improper purpose, or that he did so in a threatening or otherwise improper manner. In short, no reasonable jury could

**3.** The discovery sanction barring Yok from presenting evidence that Bow pressured her to add his name to bank accounts did not apply to Yok's same allegation against Wee.

have found for Yok on her cause of action in this case.

### III. Attorney's Fees

 "Under the so-called 'American Rule,' a prevailing litigant may not ordinarily recover attorney's fees when a case is concluded." *Chevalier v. Moon*, 576 A.2d 722, 724 (D.C.1990). A "bad faith exception" to this rule exists to permit the court "to punish abuses of the judicial process and to deter future abuses." *Id.* Under the exception, "attorney's fees will be allowed if a party has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *1901 Wyoming Ave. Coop. Ass'n v. Lee*, 345 A.2d 456, 465 (D.C.1975)). The decision to award attorney's fees in a given case is committed to the trial court's discretion, subject to review for abuse. *See Ruesch Int'l Monetary Servs., Inc. v. Farrington*, 754 A.2d 328, 331 (D.C.2000).

 Invoking the bad faith exception, Wee moved for attorney's fees after the entry of judgment in his favor. In his motion, to which Yok did not respond, Wee proffered evidence that Yok and her counsel had pursued her claims against him in bad faith. Wee pointed out that while Yok had survived his motion for summary judgment by asserting in an affidavit that he as well as Bow had threatened her, at trial she presented no evidence to link Wee in any way to Bow's supposed threats. Wee argued that Yok's other claim against him, that he committed a tort when he merely insisted on being a co-signatory on their mother's bank accounts, was meritless. Wee also cited Yok's history of evasiveness in discovery. Finally, Wee submitted two letters in which Yok's counsel offered to withdraw her claims of intentional inflic-

tion of emotional distress if Wee would return his distribution from his mother's estate and assign his interest in the Estate to Yok.

The trial judge denied Wee's motion for attorney's fees in one sentence in an order which contained no findings of fact, conclusions of law or other explanation. The lack of an articulated explanation for the denial of sanctions usually is not a matter of concern. In the usual case, the sanctions motion is plainly deficient or the reasons for denying it are otherwise clear from the record, and no explanation is needed for appellate review.[4] There are cases, however, and this is one of them, in which findings of fact are necessary for that purpose. Wee made an apparently strong showing that Yok litigated against him in bad faith. That showing was consistent with the record of the trial and pretrial proceedings, and Yok made no effort to refute it. Without findings of fact, this court cannot determine whether the trial judge, exercising his discretion, denied Wee's motion erroneously or for sound reasons. In analogous situations involving the denial of Rule 11 sanctions, we have "remand[ed] the record and direct[ed] the trial court to supplement it with ... findings of fact and conclusions of law, or an equivalent statement of reasons." *King v. King*, 579 A.2d 659, 666 (D.C.1990) (citing cases); *see also Ruesch Int'l Monetary Servs., Inc.*, 754 A.2d at 333 (deeming "a prima facie showing ... sufficient to require the trial court to render findings of fact and conclusions of law in resolving the motion for sanctions"). We shall follow that practice here, with one modification. Instead of remanding the record, we shall vacate the order denying Wee's motion for attorney's fees and

---

4. The rule is otherwise when the court *grants* a motion for sanctions. *See, e.g.,* Super. Ct. Civ. R. 11(c)(3), which provides that the trial court "shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed."

remand the case[5] so that the trial judge may revisit the motion and grant or deny it as he sees fit, with findings and conclusions or other appropriate explanation. We intimate no views on which way the judge should decide.

### IV. Conclusion

The judgment against Yok T. Jung and in favor of Wee G. Jung and Bow G. Jung is affirmed. The order of the trial court denying Wee's motion for an award of attorney's fees is vacated. The case is remanded for further proceedings in accordance with this opinion.

*So ordered.*

---

**5.** *See Bell v. United States,* 676 A.2d 37, 41 (D.C.1996) (distinguishing case remands and record remands).