Bow G. JUNG and Wee G.
Jung, Appellants,

v.

Yok T. JUNG, Appellee.

No. 02–CV–1005, 02–CV–1006.

District of Columbia Court of Appeals.

Argued Sept. 23, 2003.

Decided March 11, 2004.

John S. Lopatto, III, Washington, DC, for appellant, Bow G. Jung, and Geoffrey S. Gavett for appellant, Wee G. Jung.

Leonard L. Long, Washington, DC, for the appellee, Yok T. Jung.

Before RUIZ, REID, and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

These consolidated appeals arise from the trial court's decision on remand to deny appellants' motions for attorneys' fees. Because we are satisfied that the trial court's denial of fees was not an abuse of discretion, we affirm.

## I.

### A. The Trial

On March 5, 1997, Yok T. Jung filed suit against her brothers, Bow G. Jung and Wee G. Jung, alleging intentional infliction of emotional distress arising from several family arguments over the disposition of their mother's estate.[1] Yok sought damages for the emotional distress caused by threats she alleged her brothers made against her, including threats to "fight till the death" and to file false criminal charges against her.[2] During discovery,

---

1. For convenience, we refer to the parties by their first names: "Yok," "Bow," and "Wee."

2. The parties recorded their dispute on audio tape, the transcription of which reveals that Bow specifically stated,

the parties' conduct was no more harmonious than it had been during their family discussions. As a consequence of extreme tardiness, incomplete and evasive discovery responses, failure to meet court-ordered discovery obligations, and frivolous filings for protective orders, the motions judge imposed discovery sanctions on Yok, including an award of attorneys' fees to Bow and Wee amounting to $12,320. Both Bow and Wee then moved for summary judgment, but were denied. The motions court explained that "[w]hile most of plaintiff's allegations are very general in nature ... the plaintiff's affidavits also make claims regarding purported death threats and the bringing of false criminal charges which is sufficient to defeat summary judgment or partial summary judgment." The court's conclusion was based on Yok's sworn statements that "Bow Jung and Wee Jung have threatened to fight me to the death, as recorded on the tapes," that they "threatened my job," and that they "threatened me with criminal charges." Thereafter, Bow and Wee filed several counterclaims, alleging that Yok invaded their privacy, harassed their families in the course of service of process and disseminated scandalous personal information through court documents.

The case proceeded to trial in January of 1999. After hearing Yok's case in chief, the trial judge entered judgment as a matter of law for Bow and Wee, concluding that no reasonable jury could have found that their conduct was extreme and outrageous, or that they intended to cause Yok severe emotional distress. On Bow's and Wee's counterclaims, the jury returned a verdict in favor of Yok.

Invoking the bad faith exception to the so-called "American rule" on attorneys' fees, Bow and Wee separately moved to alter or amend the judgment in their favor in order to secure costs and attorneys' fees.[3] In an order dated March 23, 1999, the court summarily denied both requests for fees without findings of fact or conclusions of law.

### B. *The Initial Appeal*

Yok then appealed the judgment as a matter of law dismissing her claim of intentional infliction of emotional distress and the imposition of discovery sanctions. Both Bow and Wee cross-appealed the denial of attorneys' fees. *See Jung,* 791 A.2d at 48. On September 20, 1999, however, Bow filed a stipulation of dismissal with this court that effectively terminated his appeal of the trial court's March 23 order denying fees. On February 7, 2002, this court issued an opinion that affirmed the imposition of discovery sanctions and the entry of judgment as a matter of law against Yok. With respect to the cross-appeals, we vacated the trial court's March 23 order denying attorneys' fees to Wee and remanded the case "so that the trial judge may revisit the motion and grant or deny it as he sees fit, with findings and conclusions or other appropriate explanation."[4] *Id.* at 51–52. In remanding the

---

Okay. We're going to bring the [audio] tape [of our meetings] to the lawyer. We're going to hire the lawyer. Then we'll see what we can do. That's something we can do. Let's just fight till the death, to the death. Okay. Let's go.

With regard to the threat to file false criminal charges, Bow apparently warned Yok about what could happen if she concealed assets and defrauded the estate. Yok further main-

tains that Wee adopted his brother's threats. *See Jung v. Jung,* 791 A.2d 46, 50 (D.C.2002).

3. Bow filed his motion for attorneys' fees on February 22, 1999, incorporating by reference a lengthier motion by Wee, also dated February 22, 1999.

4. The court expressly chose to remand the case rather than remand the record. *See Jung,* 791 A.2d at 51 (citing *Bell v. United*

case for reconsideration of Wee's motion for attorneys' fees, the court reasoned that because Wee had made a "strong showing" that Yok had litigated against him in bad faith, the trial court was required to render a decision sufficient to support appellate review. *Id.* The court intimated no view, however, on how the trial judge should rule. *Id.*

### C. The Proceedings on Remand

On May 17, 2002, the trial court conducted a hearing on the remanded issue of attorneys' fees. Following oral arguments, the court stated,

> I am going to reconsider. That's a given. I decided the issue that was left to me by the Court of Appeals this way in this fashion. I will reconsider this order. We start from scratch .... I want a statement of findings of fact and conclusions of law, and a proposed result, from each side in this matter.

All parties submitted the requested proposals. Appellant Wee's submission specifically urged the trial court to assess fees on the ground that Yok demonstrated bad faith by (1) bringing unsupported allegations for an improper purpose, (2) committing perjury in her affidavit filed in opposition to summary judgment, (3) raising "scandalous and irrelevant" claims throughout the course of the litigation, (4) demanding unreasonable settlement terms,[5] (5) violating the rules of discovery, and (6) failing to investigate and prove her claim. On July 25, 2002, the trial court issued an order in which it concluded that it did not find a basis for disturbing its prior ruling denying attorneys' fees. Although the court did not make findings of fact or draw conclusions of law, it did provide three reasons as justification for the denial: (1) although Bow and Wee contended that Yok's emotional distress claim was unfounded, "they ignore that the emotional distress claim survived—although only barely—a pretrial motion for summary judgment, although it did not survive a motion for judgment at trial"; (2) although Bow and Wee referred the court to Yok's established misconduct in discovery, "the discovery misconduct of plaintiff was sanctioned by [the motions judge] in

---

*States,* 676 A.2d 37, 41 (D.C.1996) (distinguishing case remands from record remands)). See note 7, *infra.*

5. Yok's settlement demands were delivered through three letters written by her attorney over the course of the first year of this lawsuit. Wee points to several passages from each that "clearly identif[y Yok's] motives for filing and pursuing this lawsuit."

In the first letter, Yok's counsel stated that he believed that the jury in this case would "award [Yok] a six figure compensatory damages verdict and punitive damages verdict ...." To avoid this likelihood, counsel suggested that Wee "return the $60,000.00 distributed to him by the personal representative for the estate of [their mother]," reimburse the estate for any attorneys' fees it may be required to pay, and assign his interest in their mother's estate to Yok without compensation.

In the second letter, counsel predicted that a ruling adverse to Yok in the separate probate proceeding would be reversed on appeal, thus compelling him to "aggressively try to sell Wee's house ... to satisfy [the resulting] judgment." Counsel again suggested that Wee settle by assigning his interest in their mother's estate to Yok, and paying $15,000, which constituted one half of Yok's then-current attorneys' fees and costs.

In the third and final letter, Yok's attorney indicated that he would need to conduct extensive discovery—including, if necessary, subpoenas to Wee's minor children—related to Wee's emotional distress counterclaim. Counsel outlined the contours of this anticipated discovery, stating that whatever emotional distress Wee claims to suffer is more likely the result of his "serious marital problems," "physical fights with his wife's brother(s)," "difference[s] he has with his wife about the care of his wife's mother," and his "wife's failed childcare business."

the amount of $12,320"; and (3) although Yok's behavior at trial was "far from stellar," the weakness of her emotional distress claim was counterbalanced somewhat by defendants' "less than compelling" counterclaims. Bow and Wee now appeal from the July 25 order denying an award of attorneys' fees.

## II.

Before addressing the merits, we first resolve the question of whether Bow's appeal is properly before us.

Yok argues that Bow lacks standing to appeal the trial court's July 25 order denying fees. She maintains that since Bow filed a stipulation of dismissal effectively terminating his appeal of the March 23, 1999 order during the course of the first appeal, he cannot benefit from this court's subsequent decision in that appeal vacating the order and remanding the case for consideration of Wee's request for attorneys' fees. Bow responds by arguing that this court's decision in the first appeal vacating the March 23 order, combined with the trial court's "ruling" on remand that it would start "from scratch" and that "each side" should submit proposed findings of fact, is tantamount to an order issued pursuant to rule 60(b)(5) vacating the March 23, 1999 denial of Bow's request for attorneys' fees. *See* Super. Ct. Civ. R. 60(b)(5) (authorizing the trial court to relieve a party from a final judgment when "a *prior judgment* upon which it is based has been reversed or otherwise vacated") (emphasis added).

In support of his argument, Bow directs our attention to *Werner v. Carbo,* 731 F.2d 204, 207–09 (4th Cir.1984), in which the court construed Federal Rule of Civil Procedure 60(b)(5) as permitting a non-appeal-ing party to take advantage of a reversal secured by an appealing co-party under certain "exceptional circumstances."[6] *Id.* at 209. In *Werner,* the plaintiff sued a doctor and his professional corporation for negligence on the theory that there was no difference between the two defendants. The trial judge instructed the jury that if it determined that the doctor was liable, then it was bound to find the corporation liable to the same extent. *See id.* at 206. Following an adverse judgment, the individual doctor appealed, but the professional corporation did not. On these facts, the Fourth Circuit concluded that the professional corporation was entitled to relief from the judgment on the ground that the judgment had been reversed with respect to the individual doctor. *See id.* at 208–09. The court reasoned that the phrase "prior judgment" in Rule 60(b)(5) refers not only to time, but also to legal significance, and therefore, relief is appropriate when one judgment rests upon a contemporaneous judgment that has been reversed or otherwise vacated. *See id.* at 208.

■ We believe the present case is distinguishable. Unlike the judgment against the doctor and professional corporation in *Werner,* the trial court's March 23 order against Bow did not depend on the trial court's decision with respect to Wee. Whereas the judgment against the professional corporation in *Werner* "was wholly derivative of, coexistent with, and limited by the judgment against" the individual doctor, *id.* at 209, no such mutuality exists in this case. The record shows that Bow filed a separate motion for attorneys' fees with the trial court. The fact that Bow incorporated by reference Wee's motion does not collapse the two motions into one.

---

6. Superior Court Civil Procedure Rule 60 is identical to Federal Rule of Civil Procedure 60 except for a singular provision inapplica-ble here. *See* SUPER. CT. CIV. R. 60 cmt. (2003).

Bow's counsel presumably filed a separate motion in order to present the court with his own account of hours and expenses incurred in defense of Yok's suit. Although the trial court disposed of both motions in a single order and rejected them based on the same reasoning, the individualized nature of Bow's interest persisted, as evidenced by Bow's separately noted (and later separately withdrawn) appeal. We do not believe that the trial court's decision to resolve two motions in one order based on the same reasoning is an "exceptional circumstance" of the kind contemplated by *Werner* as warranting relief under Rule 60(b)(5). *Id.* at 209. The reasoning espoused in *Werner*—the legal dependency of the unappealed judgment on the judgment reversed on appeal—is inapplicable here as the trial court's order denying Bow's motion for fees does not rest, legally or factually, upon the denial of Wee's motion for fees. *See id.* at 208–09. Our decision to vacate the order as it pertained to Wee's motion did not hold any "prior legal significance" in relation to Bow's motion. *Id.* at 208. Accordingly, once Bow filed a stipulation of dismissal, he affirmatively terminated his appeal from the March 23, 1999 order and he now cannot rely on Rule 60(b)(5) to benefit from this court's decision in favor of his brother, who did pursue the appeal. *See Cruickshank & Co., Ltd. v. Dutchess Shipping Co.*, 805 F.2d 465, 467–68 (2d Cir. 1986) (distinguishing *Werner* on the ground that the party made a deliberate choice not to appeal, thus eliminating the equities that warrant relief).

Nor can the trial court's action reconsidering Bow's request for attorneys' fees be based on our remand order in the first appeal, because Bow's stipulation of dismissal in the first appeal implicates our jurisdiction to order a remand with respect to his claim. As we have long said, the noting of a timely notice of appeal is mandatory and jurisdictional in this court. *See, e.g., In re C.I.T.*, 369 A.2d 171, 172 (D.C.1977). We think it is clear that when a timely notice of appeal is later dismissed by the appellant, it is as if no appeal had been taken and this court may not exercise jurisdiction to adjudicate the matters raised by the dismissed notice. This fundamental concept was implicit in, and necessarily limited, our decision in *Jung* where we "vacate[d] the order *denying Wee's motion* for attorneys' fees." *Jung*, 791 A.2d at 51 (emphasis added). The plain meaning of the court's disposition indicates that we vacated the trial court's order only as to Wee who (along with Yok) was the only party in the appeal before the court. We did not, nor did we have the jurisdiction to, vacate the March 23 order as it pertained to Bow's motion for attorneys' fees.[7] Therefore, Bow's appeal is

---

7. Because we conclude that our decision in *Jung* did not vacate the March 23 order as to Bow's motion for fees, we reject the suggestion that the trial court's decision on remand to "start from scratch" permits Bow to appeal the July 25 order. In that order, now under review, the trial court apparently misperceived our instruction in *Jung* to mean that it should " 'revisit the motion' filed by Wee Jung and Bow Jung." The manner in which the proceedings were conducted on remand, however, cannot cure the antecedent limitation on our own authority to remand the case in the first place, which consequently also limited the trial court's authority on remand.

In this regard, we wish to clarify the significance of our action in *Jung* to remand the case as opposed to remanding the record. As we explained in *Bell*,

> in a record remand, this court retains jurisdiction over the case, and the trial court may take no action, with respect to the case, other than that specified in the record remand order.
>
> A "case" remand, on the other hand, returns the case to the trial court for all purposes. This court retains no jurisdiction over the case and the appeal is terminated. If, after a case remand, a party is dissatis-

dismissed.[8]

### III.

We now turn to the question of whether on remand the trial court properly denied Wee's motion for attorneys' fees.

 The District of Columbia applies the general principles of the "American rule" on attorneys' fees, including its bad faith exception. *See In re Antioch Univ.*, 482 A.2d 133, 136 (D.C.1984). Under this rule, a prevailing litigant ordinarily may not recover attorneys' fees from the defeated party when a case is concluded. *See Jung*, 791 A.2d at 51 (citation omitted). The bad faith exception to the American rule allows a court to award attorneys' fees to the prevailing party if the defeated opponent acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See id.* (citation omitted). The party's bad faith conduct must be so egregious that fee shifting becomes warranted as a matter of equity. *See Gen. Fed'n of Women's Clubs v. Iron Gate Inn, Inc.*, 537 A.2d 1123, 1128 (D.C.1988). The assessment of fees under this exception transcends the relations between litigants and reaches the court's inherent power to "vindicat[e] judicial authority without resort to the more drastic sanctions available for contempt . . . ." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)). Thus, the excep-

---

fied with the action of the trial court, the only course available to obtain review in this court, is to file a new notice of appeal, once a final order or judgment is entered. 676 A.2d at 41. Although we describe case remands as returning the case to the trial court "for all purposes," the scope of the trial court's authority on remand is necessarily limited by our jurisdiction and instructions. In *Jung*, for example, we remanded the case for full reconsideration of Wee's motion for attorneys' fees. These instructions have meaning, and necessarily cabin the trial court's powers on remand. Were a case remand sufficient to give the trial court unfettered control, regardless of the instructions and reasons for the case remand, the trial court would be at liberty to revise any aspect of the case, including those that this court otherwise affirmed. A case remand—which is, after all, a vehicle for ascertaining which court has active jurisdiction—does not permit the trial court to act as if the appeal had not taken place. Rather, we comprehend the language in *Bell* to mean that a case remand, unlike a record remand, allows the trial court to amend the ruling that was reviewed and found wanting on appeal, *see id.* at 41, and to conduct the balance of the proceedings to final judgment. *See id.* (explaining that the only course available to a party dissatisfied with the action of the trial court after a case remand is to file a new notice of appeal once a final judgment is entered).

8. During oral argument, Bow's counsel urged us to consider two orders issued by a motions division of this court denying Yok's motion to strike Bow's appellate brief and dismiss Bow's appeal for lack of standing. Counsel argued that these orders constrain our deliberations and direct a decision permitting Bow to maintain his present appeal. We disagree. Although appellate courts generally adhere to a ruling made on a prior motion, such adherence is discretionary. *See Kleinbart v. United States*, 604 A.2d 861, 866 (D.C.1992) (citation omitted). A merits panel of this court will not consider itself bound by an order of a motions panel "if a previous ruling in the case is not sufficiently final or is clearly erroneous in light of newly presented facts or a change in substantive law." *Id.* (internal quotation marks and citations omitted). We do not decide whether this is a case where adherence to the motions division's decision is warranted because, unless the motions division provides otherwise, denial of a motion to dismiss is "without prejudice to reconsideration by a[m]erits [d]ivision." *District of Columbia v. Trs. of Amherst College*, 499 A.2d 918, 920 (D.C.1985). *See In re J.A.P.*, 749 A.2d 715, 717 (D.C.2000) (holding that "even when a motions division has allowed the appeal to proceed . . . the division assigned to decide the merits is not bound by that order if, after briefing and further consideration, it concludes that the standards governing appeal . . . are not satisfied").

tion contemplates the award or denial of attorneys' fees to punish abuses of the judicial process and deter future misconduct. See Jung, 791 A.2d at 51 (citation omitted).

 In vindicating its authority, however, the court must scrupulously avoid penalizing litigants for aggressively litigating their claims or discouraging good faith assertions of colorable claims and defenses. See In re Estate of Delaney, 819 A.2d 968, 998 (D.C.2003) (quoting Lipsig v. National Student Mktg. Corp., 214 U.S.App. D.C. 1, 4, 663 F.2d 178, 180–81 (1980)). Judicial circumspection in awarding attorneys' fees under the bad faith exception is necessary to safeguard a litigant's right of access to the courts. See id. (quoting Synanon Found., Inc. v. Bernstein, 517 A.2d 28, 37 (D.C.1986)). Mindful of this right, we have emphasized that the standards for a showing of bad faith are necessarily stringent, see id. (quoting Adams v. Carlson, 521 F.2d 168, 170 (7th Cir.1975)), precluding awards for attorneys' fees in the absence of extraordinary circumstances or dominating requirements of fairness. See Synanon Found., Inc., 517 A.2d at 37 (citing Launay v. Launay, Inc., 497 A.2d 443, 450 (D.C.1985); Andrews v. District of Columbia, 443 A.2d 566, 569 (D.C.1982); Kasachkoff v. Ross H. Finn, Co., 408 A.2d 993, 995 (D.C.1979)). A party alleging bad faith bears a "heavy burden" of proof. Schlank v. Williams, 572 A.2d 101, 111 (D.C.1990).

 Bad faith may be found either in the initiation of a frivolous claim or in the manner in which a properly filed claim is subsequently litigated. See Synanon Found., Inc., 517 A.2d at 38. To ascertain whether a litigant has initiated an action in bad faith the court examines whether "the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." Id. at 40 (emphasis added); see also Gen. Fed'n of Women's Clubs, 537 A.2d at 1128–1129 (describing the bad faith determination as a two-part test). A claim is colorable when it "has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." Synanon Found., Inc., 517 A.2d at 40 (quoting Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir.1980) (per curiam) (finding a lack of "clear evidence" that a claim was "entirely without color")). "The question is whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually had been established" at the time the complaint was filed. Id. A party's bad faith in the maintenance of a colorable action, on the other hand, may manifest itself through procedural "maneuvers" lacking "justification or for an improper purpose, such as harassment or delay." Id. (quoting Browning Debenture Holders' Comm., v. DASA Corp., 560 F.2d 1078, 1088 (2d Cir.1977)).

A. Standard of Review

 We recognize that when determining whether sanctions are warranted, the trial court "is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard ...." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Our appellate review is correspondingly limited: "[t]he predicate finding of bad faith vel non is a factual one which we review under the clearly erroneous standard, and the decision to award fees will be reversed only for abuse of discretion." Fischer v. Estate of Flax, 816 A.2d 1, 12 (D.C.2003) (internal quotation and citation omitted); see also Jung, 791 A.2d at 51 (citing Ruesch Int'l Monetary Serv's., Inc. v. Farrington, 754 A.2d 328, 331 (D.C.2000)). Our review of

the trial court's ultimate decision to deny attorneys' fees is therefore confined to a determination of "whether the [trial court] failed to consider a relevant factor, whether [it] relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *See Johnson v. United States,* 398 A.2d 354, 365 (D.C. 1979) (citation omitted).

### B. *Analysis*

On appeal, Wee raises several arguments, including that the trial court abused its discretion by failing to make formal findings of fact and conclusions of law, by misconstruing the legal significance of both Yok's survival of summary judgment and Wee's filing of counterclaims, and by disregarding the letters written by Yok's counsel.

■ Appellant's argument that the trial court was required to issue formal findings of fact and conclusions of law is unavailing. As the *Jung* court noted, the absence of an articulated explanation for the denial of sanctions is not a matter of concern in the ordinary case where the sanctions motion typically is deficient on its face. *See Jung,* 791 A.2d at 51. Thus, it cannot be said that a court always must issue formal findings of fact and conclusions of law when denying sanctions. In the particular context of this case, however, the motion was not facially deficient and in the first appeal we instructed the trial judge to "revisit the motion and grant or deny it as he sees fit, with findings and conclusions *or other appropriate explanation." Id.* at 52 (emphasis added). Our court's remand instruction was permissively disjunctive, indicating that no particular form of order was required. The trial court's order falls within the parameters of the remand instructions. Accordingly, the trial court did not abuse its discretion in failing to make formal findings.

Wee's arguments on the merits largely challenge the bases upon which the trial court found that Yok did not initiate the present litigation in bad faith. We therefore begin with an examination of whether the trial court's chosen factors were improper in the manner Wee asserts.

■ Appellant argues that the trial court should not have relied on the fact that Yok's claim survived summary judgment. During the remand proceedings, Wee ventured to show Yok's bad faith by emphasizing the baselessness of her claim for intentional infliction of emotional distress. It was in response to this evidence of bad faith that the trial court countered by reasoning that Yok's claim had survived summary judgment. As a preliminary matter, we note that this type of reasoning was proper, since summary judgment is designed to test whether a triable claim exists. *See* Super. Ct. R. Civ. P. 56(a); *O'Donnell v. Assoc. Gen. Contractors of America,* 645 A.2d 1084, 1086 (D.C.1994)(summary judgment cannot be granted where genuine issues of material fact exist, or a party is not entitled to judgment as a matter of law). Such an analysis is consistent with the court's obligation under the bad-faith exception to ascertain whether the plaintiff's claim "has some legal and factual support," and is thus colorable. *Synanon Found., Inc.,* 517 A.2d at 40 (citation omitted); *cf. In re Estate of Delaney,* 819 A.2d at 999 (finding no bad faith where initial pleadings were based on some facts that tended to support the litigant's claim).

Although the court's reliance on the denial of summary judgment is theoretically logical, in this case it is misleading, Wee argues, because Yok survived summary judgment only because she contemptuously evaded deposition and averred a false and conclusory affidavit. The trial court was specifically alerted to these claims in

Wee's proposed findings, but made no reference to them in its July 25 order. We agree that the trial court's reliance on its denial of summary judgment of Yok's claim would be stronger if the court had also examined whether Yok *should have survived* summary judgment had she complied with discovery. Despite this concern, however, we cannot say that the court's denial of summary judgment constituted an "improper factor" in the court's *decision* to deny fees, particularly where the trial court considered that Yok was separately sanctioned for delays and other tactics during the course of discovery. Thus, Wee already had received attorneys' fees for whatever bad faith Yok may have exhibited by contemptuously evading deposition. More importantly, Yok's delay in submitting to a deposition did not enable her to overcome summary judgment. Although Wee relates the two by arguing that his motion for summary judgment would have prevailed had he possessed the supposedly damning information contained in the deposition at the time he needed to respond to Yok's opposition to the motion for summary judgment, our review of the record indicates that there was nothing in the deposition that would have empowered Wee to unmask Yok's affidavit as being a sham.

■ Wee's related assertion is that Yok's bad faith is evident because she was able to survive summary judgment and bring her case to trial only by averring a false affidavit in support of her opposition to summary judgment. He argues that "[e]vidence at trial … established that these sworn statements were simply false." Generally speaking, the failure of proof at trial cannot, without more, be a basis for a finding of bad faith. *See Synanon Found., Inc.*, 517 A.2d at 36 (recognizing that the American rule is premised on the maxim that since litigation is uncertain in its out-

come, one should not be penalized for prosecuting an unsuccessful lawsuit); *see also Americana Indus., Inc. v. Wometco de Puerto Rico, Inc.*, 556 F.2d 625, 628 (1st Cir.1977) ("Invocation of the bad faith exception … requires more than a showing of a weak or legally inadequate case."); *Driscoll v. Oppenheimer & Co.*, 500 F.Supp. 174, 176 (N.D.Ill.1980) ("[T]he fact that this litigation ultimately proved to be misguided and unconvincing cannot in itself serve as a basis for assessing attorneys' fees against the plaintiff.") (citing *Aid Auto Stores, Inc. v. Cannon*, 525 F.2d 468, 471 (2d Cir.1975) ("Mere failure of a party to present sufficient evidence to support [a] claim will not in itself warrant a determination of frivolity.")). Nor is there evidence in this case that statements in Yok's affidavits were false. The trial court's rejection of Yok's claim after hearing her trial testimony did not imply that Yok was palpably incredible in her subjective belief, but was based on the trial court's determination that no reasonable juror could find that, objectively viewed, her brothers' conduct was extreme or outrageous as required to make out a claim of intentional inflection of emotional distress. We affirmed this ruling. *See Jung*, 791 A.2d at 52.

■ Wee also urges us to consider a discrepancy between Yok's affidavit filed in opposition to summary judgment and the audio tape recording of the family argument in which Bow and Wee were alleged to have made the statements Yok claimed were intended to cause her severe emotional distress. Specifically, Wee points out that while Yok swore in her affidavit that "Bow Jung and Wee Jung have threatened to fight me to the death, as recorded on the tapes," the tape recordings, in fact, reveal that although Bow talked of a "fight to the death," Wee uttered no such words, and Yok admitted as

much at trial. We do not believe that this putative discrepancy is conclusive evidence that Yok's affidavit is perjured. Yok's sworn statement is in fact consistent with her assertion that, by remaining silent, Wee adopted his brother Bow's words. Yok's later testimony, both in her deposition and at trial, does not repudiate this position. Without Yok's repudiation of any of the statements she averred in her affidavit, we cannot say that her affidavit was a sham. Thus, there was no error in the court's reliance on the denial of summary judgment (which in turn relied on Yok's affidavit) as a basis for denying bad faith attorneys' fees in this case.

■ Wee also argues that the trial court misused the counterclaims to mitigate Yok's alleged bad faith in initiating the litigation. He considers this particularly egregious because his request for attorneys' fees was limited to those hours and expenses dedicated to defending Yok's emotional distress claim, and excluded fees and expenses incurred with respect to his own counterclaims. While Wee persuasively argues that his counterclaims cannot logically mitigate Yok's alleged bad faith, it is not clear from the record that the court did so. In the July 25 order, the trial court said it previously concluded that "the weakness of [Yok's] emotional distress claim was counterbalanced somewhat by defendants' less than compelling counterclaims. After all, the jury decided against the defendants on their counterclaim after a fair trial ...." Taken as a whole, the July 25 order at first glance seems to suggest somewhat illogically that Yok's ability to survive summary judgment and present her claim to a jury indicates an absence of sanctionable bad faith on her part, yet Wee's success in getting to a jury which happened to decline rendering a favorable verdict somehow suggests the presence of counterbalancing bad faith on

Wee's part. Upon closer inspection, however, we believe that the judge's words are best understood in another way. This statement takes on clearer meaning when put into the context of the court's "previous conclusion" to which it specifically alluded. During the remand hearing, the following exchange occurred:

[Yok's Attorney]: ... I'd say here is the pot calling the kettle black....

[Court]: I must confess that that is really what I was thinking when I, when I denied the motion.... I viewed this as a frivolous lawsuit brought by the plaintiff. But I don't—I didn't think that the responses, how shall I say this, of the, of the defendant counter claimants were calculated to create economies. I can't say it any better than that. I thought there was a lot of stuff going on both sides and in both direction[s] that was uncalled for.

Thus, in keeping with the court's inherent equitable power under the bad faith exception to vindicate its authority and punish abuses of the judicial process, *Jung,* 791 A.2d at 51, the trial judge recognized that both parties had arguably abused the system to ventilate personal grievances. This balancing of the equities is fully appropriate under the bad faith exception. In *Dalo v. Kivitz,* 596 A.2d 35 (D.C.1991), we approved of the trial court's denial of attorney's fees under the bad faith exception because, in the words of the trial court, the movant's "hands [were] far from clean." *Id.* at 40. We reasoned that the trial court is not precluded from taking into account " 'clean hands' considerations in deciding whether to shift fees on grounds of bad faith conduct, when the result 'incidentally [is to] compensate[ ] the prevailing party for costs which should not have been incurred.' " *Id.* (citing *Synanon Found., Inc.,* 517 A.2d at 37). Noting that Bow's and Wee's filing of counterclaims produced

its own public parade of private family horribles, the court apparently considered the parties in equipoise, concluding, "[i]n the end, the court [is not] convinced that the presumption that the 'American Rule' should apply to defendant[']s[ ] attorneys fees claim had been overcome." Cognizant of the deference we owe to the trial court's application of this fact-dependent legal standard, we find no abuse of discretion in this reasoning.

■ Lastly, we address an issue raised at oral argument. Although counsel initially indicated that Wee was not challenging the selection of factors used by the judge in rendering the decision (but rather the legal significance that the judge attached to those factors), counsel later stated that the trial court abused its discretion by failing to consider the series of letters written by Yok's attorney. Counsel argued that the letters are further evidence that Yok initiated this lawsuit in bad faith. We therefore limit our review of "whether the trial court failed to consider a relevant factor," *Johnson*, 398 A.2d at 365, by focusing on the legal significance of the letters.[9]

■ Wee's proposed findings of fact and conclusions of law (submitted on remand) included as exhibits the letters drafted by Yok's counsel, the substance of which we already have outlined. See note 5, *supra.* After reviewing the letters in the full context of this case, we are of the opinion that the letters do not constitute a relevant factor which the trial court improperly neglected. The trial court's analysis of the significance of the denial of summary judgment is critical, because it clearly indicates that the trial judge found

that Wee had not met his burden of showing the first prong of the bad-faith test, that is, that Yok's claim was wholly without legal and factual support. *See Gen. Fed'n of Women's Clubs*, 537 A.2d at 1128–1129 (describing first prong of two-part test as whether the claim is without color in the first place, and second prong as whether it was asserted "wantonly, for purposes of harassment or delay, or for other improper reasons"). Since, as we've already discussed, the trial court's determination on this score was not improper, the significance of the letters correspondingly recedes. Assuming for the sake of argument that the letters reveal an improper motivation on Yok's part in pursuing the litigation, we do not comprehend the bad faith exception to the American rule to allow the trial judge to sanction litigants for bringing colorable claims when they also happen to have other ulterior motives of questionable propriety. The truth is that litigation often is brought for a host of reasons, and with varying degrees of animus and vehemence. It is only when these ulterior motives subsume the litigation and impel a litigant to file a meritless claim, interpose a frivolous defense, or undertake an unjustified procedural maneuver, that the judicial process is abused and the litigant's conduct comes within the ambit of the bad faith exception. We do not believe that the letters reveal any such abuse on Yok's part in the absence of a meritless claim, or unjustified procedural tactic for which Yok has not already been sanctioned.

Our decision today should not be interpreted to mean that the specific letters in this case were proper, or that letters of

---

9. We usually do not consider claims raised for the first time during oral argument because of the unfairness to the opponent, who has not had an opportunity to consider and present a response. See *D.D. v. M.T.*, 550 A.2d 37, 48 (D.C.1988) (citing *Miller v. Avirom*, 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967)). There is no such unfairness where, as here, we reject the claim.

counsel are never relevant in ascertaining the existence of bad faith. Such letters may well shed light on the existence of bad faith where a claim has been filed, or a defense interposed, without any legal or factual support, or where an obstinate procedural maneuver is undertaken without proper justification. None of these circumstances is present here, thus distinguishing this case from those we previously have found warranted imposition of bad faith fees. *See, e.g., Fischer v. Estate of Flax,* 816 A.2d 1, 12 (D.C.2003) (orchestrating a cover-up of fraudulent evidence); *Jemison v. National Baptist Convention USA, Inc.,* 720 A.2d 275, 283 (D.C.1998) (colluding with other parties and forging documents on which a request for a temporary restraining order was based).

For all the foregoing reasons, the judgment of the trial court denying the motion for bad faith attorneys' fees is

*Affirmed.*