*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 23-CV-0298 & 23-CV-0299

GERARDINE LUMBIH, APPELLANT,

v.

CAROLYN WILSON, *et al.*, APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(2016-CA-005209-R(RP) & 2018-CA-006980(B))

(Hon. Yvonne Williams, Trial Judge)

(Argued September 17, 2024     Decided December 19, 2024)

*Tyler Jay King* for appellant.

*Vanessa Carpenter Lourie* for appellee Carolyn Wilson.

*Andrew J. Lavin*, with whom *Brian L. Kass* was on the brief, for appellee Ntaky Management, LLC.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant Gerardine Lumbih challenges an order that (1) declared that appellee Ntaky Management ("Ntaky") rather than Ms. Lumbih owns a disputed area between properties owned by Ms. Lumbih and Ntaky; (2) authorized Ntaky to remove, at Ms. Lumbih's expense, encroachments

from Ms. Lumbih's property onto the disputed area; (3) denied Ms. Lumbih's breach-of-contract claim against appellee Carolyn Wilson, who had sold the properties at issue to Ms. Lumbih and Ntaky; and (4) declined to require Ms. Wilson to indemnify Ms. Lumbih for costs associated with removing the encroachments. We affirm in part, vacate in part, and remand the case for further proceedings.

## I. Factual and Procedural Background

Except as noted, the following basic facts appear to be undisputed. Ms. Wilson was the owner of real property in the District of Columbia designated as Lot 824. Ms. Wilson subdivided the lot into Lots 825, 826, and 827. Lots 825 and 826 are adjacent. Records maintained by the Office of the Surveyor for the District of Columbia describe Lot 825 as thirty feet in length from north to south.

Ms. Wilson sold Lot 826 to Ntaky in 2009. The deed for the sale identifies the property as measuring twenty feet by forty feet. A year later, Ms. Wilson sold Lot 825 to Ms. Lumbih. During the purchase process, Vyfhuis & Associates ("Vyfhuis") provided an informal survey of Lot 825. The Vyfhuis survey, which stated that it was "not a property line survey," described Lot 825 as thirty-eight feet in length from north to south.

The deed for Ms. Lumbih's purchase refers to Lot 825 but also describes the property as thirty-eight feet in length from north to south, consistent with the Vyfhuis survey and inconsistent with the D.C. survey records. Ms. Wilson and Ms. Lumbih also entered into a purchase agreement for Lot 825. That agreement is not in the trial record or the record before this court.

Because of the prior sale to Ntaky, Ms. Wilson did not own all of the property described in the deed to Ms. Lumbih. The conflicting descriptions of the property sold in the two deeds created a disputed area that was eight feet wide and that lay between the property purchased by Ntaky and the property purchased by Ms. Lumbih.

Ms. Lumbih subsequently installed an HVAC unit and deck in the disputed area. In 2018, Ntaky's counsel sent Ms. Lumbih a letter explaining that Ntaky had discovered that Ms. Lumbih's HVAC, deck, and stairs were located on Ntaky's property. The letter asked Ms. Lumbih to remove the items, but Ms. Lumbih did not do so.

Ntaky subsequently sued Ms. Lumbih, asserting that it owned the entirety of Lot 826 and seeking an injunction requiring the removal of Ms. Lumbih's stairway, deck, and HVAC unit.

Ms. Lumbih brought various counterclaims against Ntaky, including a quiet-title claim seeking declaratory relief confirming that title to Lot 825 should be quieted in conformance with the deed that Ms. Lumbih received from Ms. Wilson. Ms. Lumbih also brought third-party claims against Ms. Wilson under theories including implied indemnity and breach of contract. Ms. Lumbih sought damages for losses she suffered in defending against Ntaky's lawsuit and any losses stemming from a decision by the court that Ms. Lumbih does not hold title to the property as warranted by Ms. Wilson in the deed.

The relevant evidence presented at the non-jury trial included the facts described above. On the quiet-title claims, the trial court held that Ntaky was the sole legal and equitable owner of Lot 826 and was therefore entitled to cause the removal of the encroachments at issue (specifically the deck, stairway, and HVAC unit) at Ms. Lumbih's cost, risk, and expense. The trial court denied both Ms. Lumbih's breach-of-contract claim against Ms. Wilson and Ms. Lumbih's equitable claim of implied indemnity against Ms. Wilson.

## II.  Analysis

### A.  Ntaky Management

Although Ms. Lumbih named Ntaky as an appellee, Ms. Lumbih's briefs in this court do not explicitly challenge either the trial court's award of relief to Ntaky or the trial court's denial of Ms. Lumbih's claims for relief against Ntaky. Ms. Lumbih's reply brief instead clarifies that Ms. Lumbih's position on appeal "has not been to dispute where the trial court found the boundary line to be, but rather Ms. Lumbih challenges the [t]rial [c]ourt's factual findings and conclusions of law as they related to the consequences between Ms. Lumbih and Ms. Wilson, stemming from the finding on [] where the boundary line legally lies."

At oral argument, Ms. Lumbih suggested that the trial court should have granted relief against Ntaky by redrawing the boundary between the property that Ntaky bought and the property that Ms. Lumbih bought.  In general, we do not consider points raised for the first time with this court at oral argument.  *See, e.g.*, *Jung v. Jung*, 844 A.2d 1099, 1112 n.9 (D.C. 2004) ("We usually do not consider claims raised for the first time during oral argument because of the unfairness to the opponent, who has not had an opportunity to consider and present a response.").  In any event, Ms. Lumbih does not cite, and we are not aware of, any support for the idea that the trial court erred by declaring that Ntaky owned the full property that it

had purchased from Ms. Wilson and was entitled to cause the removal, at Ms. Lumbih's expense, of the encroachments onto that property. We therefore uphold the trial court's rulings with respect to Ntaky.

**B. Ms. Lumbih's Breach-of-Contract Claim Against Ms. Wilson**

Ms. Lumbih argues that the trial court erroneously denied her breach-of-contract claim because the trial court did not consider Ms. Wilson's duty to convey the land as provided in the deed. We agree.

The trial court denied Ms. Lumbih's breach-of-contract claim because the trial court "[could] not conclude that Ms. Wilson had a duty to confirm that [Lot 825's] dimensions were correct." Ms. Lumbih does not directly contest in this court the trial court's conclusion that Ms. Wilson had no duty to confirm the lot dimensions. We therefore assume without deciding that the trial court was correct on that point. Ms. Lumbih, however, has based her breach-of-contract claim on a different contractual duty: Ms. Wilson promised to sell a property thirty-eight feet in length and failed to do so. We therefore conclude that the trial court's finding that Ms. Wilson did not have a duty to confirm Lot 825's lot dimensions is not a valid ground for denying Ms. Lumbih's breach-of-contract claim.

The trial court understood the deed for Lot 825 to "purport[] to convey Lot 825 with dimensions of 40 feet by 38 feet to Ms. Lumbih," a conclusion that neither party has directly contested in this court. We therefore take as a given that the deed imposed on Ms. Wilson a duty to convey a property with dimensions of forty feet by thirty-eight feet. *See generally BSA 77 P St. LLC v. Hawkins*, 983 A.2d 988, 993-94 (D.C. 2009) ("A promise . . . is an express or implied declaration that raises a duty to perform and subjects the promisor to liability for breach for failure to do so."). Ms. Lumbih relied on this duty in her breach-of-contract claim, stating that Ms. Wilson "did not and could not convey the entire dimensions of land that she offered to sell." The trial court, however, did not address whether Ms. Wilson breached a duty to convey a property thirty-eight feet in length. We therefore remand the case for the trial court to consider the argument. *See, e.g.*, *Stancil v. First Mount Vernon Indus. Loan Ass'n*, 131 A.3d 867, 874 (D.C. 2014) (issue that trial court did not address was "best left for the trial court in the first instance on remand").

We note a number of issues that might arise on remand: (1) whether the deed is ambiguous given that it includes both the Vyfhuis survey dimensions and reference to Lot 825; (2) how to resolve any such ambiguity; (3) the possible application of doctrines such as mutual mistake and impossibility to resolution of Ms. Lumbih's breach-of-contract claim; and (4) whether any of these arguments

were properly preserved in the trial court. The parties have not adequately raised those issues in this court, so we see no reason to address them at this juncture, and we instead leave the issues to be addressed by the trial court if they are raised. *District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 33 n.3 (D.C. 2001) (this court's review on appeal is generally limited to issues that were properly raised and preserved).

In denying Ms. Lumbih's breach-of-contract claim based on the conclusion that Ms. Wilson had no duty to confirm Lot 825's dimensions, the trial court relied on *Fireison v. Pearson*, 520 A.2d 1046 (D.C. 1987). We are not persuaded that *Fireison* defeats Ms. Lumbih's breach-of-contract claim.

*Fireison*, a fraud case applying Maryland law, held that a purchaser who assumes the burden of examining land records cannot recover from the seller under a claim of misrepresentation. 520 A.2d at 1050 ("If . . . the means of knowledge are at hand, and the purchaser undertakes to make an examination of the land records, he cannot say that he was deceived and injured by misrepresentations of the vendor.") (emphasis and internal quotation marks omitted). *Fireison* established that this principle is applicable to claims of "negligent or innocent misrepresentation" and fraud. *Id.* *Fireison* did not address whether an undertaking to examine land

records bars recovery under a breach-of-contract claim that alleges no misrepresentation.

Ms. Lumbih's breach-of-contract claim is not predicated on any misrepresentation or other form of fraud. Rather, Ms. Lumbih argues that Ms. Wilson failed to convey land that she promised to convey through the deed. We therefore conclude that *Fireison* does not govern the resolution of Ms. Lumbih's breach-of-contract claim.

At oral argument, Ms. Wilson raised two alternative grounds for affirming the trial court's denial of her breach-of-contract claim: (1) the statute of limitations had run; and (2) Ms. Lumbih failed to adequately allege or prove damages. We have the authority in appropriate circumstances to decide issues of law not addressed by the trial court. *Evans v. United States,* 122 A.3d 876, 883 (D.C. 2015) ("[W]e may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge or raised or considered in the trial court, so long as doing so would not be procedurally unfair.") (internal quotation marks omitted). We often decline, however, to decide issues in the first instance. *See, e.g.*, *Newell-Brinkley v. Walton,* 84 A.3d 53, 61 (D.C. 2014) ("We choose not to decide that issue in the first instance, mindful that we are a court of review, not of first view.") (brackets, ellipsis, and internal quotation marks omitted). In this case, we decline to consider these issues

in the first instance.  We therefore express no view as to whether the issues were properly raised in the trial court and, if so, whether the issues have merit.  If necessary, the trial court can address the issues on remand.

For the foregoing reasons, we vacate the denial of Ms. Lumbih's breach-of-contract claim and remand the case for further proceedings.

### C.  Ms. Lumbih's Equitable Claim of Implied Indemnity

Ms. Lumbih argues that the trial court "should have invoked its equitable powers to find Ms. Wilson liable to the parties on account of any damages associated with the boundary line" through the doctrine of implied indemnity.  We disagree.

A trial court's decision to grant equitable relief is a discretionary determination.  *See, e.g.*, *Angland v. Doe*, 263 F.2d 266, 268-69 (D.C. Cir. 1958) ("A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.") (internal quotation marks omitted); *Milton Props., Inc. v. Newby*, 456 A.2d 349, 354 (D.C. 1983) ("The granting of such [injunctive] equitable relief is committed to the discretion of the trial court.").  "Judicial discretion will not be reversed unless it appears that it was exercised on grounds, or for reasons, clearly untenable or to an

extent clearly unreasonable." *Johnson v. United States*, 398 A.2d 354, 363 (D.C. 1979) (internal quotation marks omitted).

Equitable relief is generally disfavored when relief at law is available. *See, e.g.*, *Leftwich v. Leftwich*, 442 A.2d 139, 145 (D.C. 1982) ("The merger of law and equity in our courts does not erode the venerable principle that an adequate remedy at law provides a preferable substitute to coercive equitable relief."). Here, Ms. Lumbih seeks a remedy at law through her breach-of-contract claim against Ms. Wilson. At oral argument, Ms. Lumbih acknowledged that her equitable claim is contingent on the failure of her breach-of-contract claim.

Because we are remanding Ms. Lumbih's breach-of-contract claim, we could in theory decline to consider Ms. Lumbih's admittedly contingent equitable claim. Nevertheless, because the issue has been briefed by the parties, seems straightforward, and might occur on remand, we elect to consider Ms. Lumbih's equitable claim. We conclude that the claim was not adequately supported in this case.

The equitable doctrine of implied indemnity is a tort concept that "arises without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory." *Myco, Inc. v. Super Concrete Co.*, 565 A.2d 293, 297 (D.C. 1989) (brackets and internal quotation marks omitted). If applicable in this

case, the doctrine would in effect shift to Ms. Wilson the responsibility for the damages that Ms. Lumbih would otherwise be required to pay to Ntaky. The doctrine would be applicable only if (a) Ms. Wilson owed Ms. Lumbih "a specific duty of defined nature," and (b) Ms. Wilson and Ms. Lumbih had "a special legal relationship." *Quadrangle Dev. Corp. v. Otis Elevator Co.*, 748 A.2d 432, 435 (D.C. 2000) (internal quotation marks omitted). The duty that gives rise to implied indemnity "must flow from considerations other than the contractual relationship." *Choharis v. State Farm Fire & Cas. Co.,* 961 A.2d 1080, 1089 (D.C. 2008).

In support of her argument for implied indemnity, Ms. Lumbih states that "Ntaky had sued Ms. Lumbih for something that Ms. Wilson had done, and not for something that Ms. Lumbih had done." Ms. Lumbih fails, however, to identify a duty of care that would require a trial court to apply the equitable doctrine of implied indemnity. Ms. Lumbih's assertion that "Ms. Wilson escaped the liability she created for herself" by selling the property to Ms. Lumbih similarly fails to identify a relevant duty of care separate from Ms. Wilson's obligations to Ms. Lumbih under the deed.

Given that Ms. Lumbih did not identify a non-contractual duty of care that Ms. Wilson owed Ms. Lumbih, the trial court acted within its discretion in declining to apply the doctrine of implied indemnity. We therefore affirm the trial court's

determination that Ms. Wilson is not liable to Ms. Lumbih under the equitable doctrine of implied indemnity for costs associated with removing the encroachments at issue.

For the foregoing reasons, the judgment of the Superior Court is affirmed in part and vacated in part, and the case is remanded for further proceedings.

*So ordered.*