In re Sally A. JUMPER;

William N. Rogers, et al., Appellants.

Nos. 04–PR–1470, 05–PR–338.

District of Columbia Court of Appeals.

Argued April 19, 2006.
Decided Oct. 19, 2006.

William N. Rogers, pro se. William J. Carter, Washington, DC, filed a brief for appellant Anderson.

Andrea J. Sloans, pro se.

Before FISHER, Associate Judge, and NEBEKER and SCHWELB,* Senior Judges.

NEBEKER, Senior Judge:

In these consolidated appeals, appellants William N. Rogers and Allen P. Anderson challenge the trial court's assessment of counsel fees against them as sanctions pursuant to Super. Ct. Civ. R. 11. We conclude that sanctions under Rule 11 are not available due to non-compliance with the Rule's "safe harbor" provision and that the trial court made no express finding of bad faith to support an exercise of the court's inherent authority to impose sanctions. Accordingly, we hereby reverse the award of fee sanctions and remand the case for a finding regarding the existence of bad faith vel non.

## I. *Background*

This case arises out of a dispute between interested parties and their respective counsel over the estate arrangements of now-deceased Sally A. Jumper. Following a motion for sanctions pursuant to Super. Ct. Civ. R. 11, the trial court held three days of hearings on the matter and ultimately assessed appellants Allen Anderson and William N. Rogers $45,095.62 in counsel fees and expenses.[1] The trial court concluded that the appellants, among other things: (1) improperly filed a petition to appoint a guardian and conservator for Ms. Jumper despite the existence of estate planning documents of which appellants either were or reasonably should have been aware; (2) failed to inform parties "whose participation was necessary for full and proper adjudication of the matter" that they had filed the petition; (3) "impaired the [trial court's] access to critical information on which to base the [c]ourt's judgment and Orders"; (4) asserted that Ms. Jumper's estate was in danger of being "wasted or dissipated" despite having no evidence to support this assertion; (5) filed the petition for improper purposes, including "Anderson's hostility" toward Colonel Jan Verfuth, fiduciary of the Sally Jumper Trust; (6) "acted in derogation of the Rules of [the trial court] in seeking discovery of confidential information after the court vacated [Anderson's] appointment as [Ms. Jumper's] Guardian"; and (7) met with Ms. Jumper outside the pres-

---

* Judge Schwelb was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on June 24, 2006.

1. The court awarded $25,745.58 in fees and expenses to Quinn, Racusin & Gazzola Chartered and $19,350.04 in fees and expenses to Andrea J. Sloan, Esquire.

ence of her attorney without notifying her attorney or advising Ms. Jumper to consult her attorney, and convinced her to make changes to her estate plan that were favorable to appellant Anderson. According to the trial court, appellants' conduct not only violated Rule 11, but also "borders on contempt of [court] and constitutes serious violations of the D.C. Rules of Professional conduct." However, the trial court did not specify, at least explicitly, whether it found that appellants' conduct was in "bad faith."

## II. Sanctions Pursuant to Rule 11

■ The trial court assessed sanctions pursuant to Super. Ct. Civ. R. 11, which provides in part: "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, *the court may,* subject to the conditions stated below, *impose an appropriate sanction* upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Super. Ct. Civ. R. 11(c) (2003) (emphasis added). Since the assessment of sanctions is a matter committed to the discretion of the trial court, we review to determine the existence of an informed exercise of discretion and for an abuse of it. *See In re Estate of King,* 769 A.2d 771, 780 (D.C.2001); *Johnson v. United States,* 398 A.2d 354, 361–67 (D.C.1979). "An exercise of discretion must rest on correct legal principles ... and a discretionary decision based on an 'erroneous premise' cannot stand." *Breezevale Ltd. v. Dickinson,* 759 A.2d 627, 640 (D.C.2000) (citation omitted), *aff'd on reh'g,* 783 A.2d 573, 575 (D.C.2001) (en banc).

■ We hold that the trial court erred as a matter of law when it imposed sanctions pursuant to Rule 11 even though the moving party failed to comply with the "safe harbor" provision contained within the Rule. In relevant part, Rule 11 provides:

A motion for sanctions under this rule ... shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Super. Ct. Civ. R. 11(c)(1)(A) (2003). This court has required compliance with the safe harbor provision in order for sanctions to be awarded pursuant to Rule 11. *See Goldberg. Marchesano. Kohlman. Inc. v. Old Republic Sur. Co.,* 727 A.2d 858, 863 (D.C.1999) ("The plain language of the rule indicates that this notice and opportunity prior to filing is mandatory."). In the present case, the moving parties failed to comply with the safe harbor provision by not serving appellants with notice and permitting them a chance to withdraw or correct the challenged papers before presenting the motion to the court. This defect is fatal to the imposition of sanctions pursuant to Rule 11, *id.* at 864, and thus the court erred by ignoring the safe harbor requirement. That error cannot be corrected by a latter day safe harbor exercise; that "bell" has already been "rung." [2]

**2.** We also note an additional error with the trial court's imposition of sanctions pursuant to Rule 11. At the time sanctions were assessed, Rule 11 governed only representations to the court made "in a pleading, written motion, or other paper." D.C. Super. Ct. Civ. R. 11(b) (2003). In the present case, the trial court did not distinguish between written representations to the court and other conduct that falls outside the scope of Rule 11. To the extent Rule 11 sanctions were imposed for conduct other than written representations to the court, this was in error. *See Chevalier v. Moon,* 576 A.2d 722, 723 (D.C.1990) (finding error in the imposition of Rule 11 sanctions for oral representations).

### III. *Sanctions Pursuant to Inherent Authority*

■ The conclusion that Rule 11 sanctions are unavailable does not end our inquiry in this case, as "this court may affirm a decision for reasons other than those given by the trial court." *Chevalier, supra* note 2, 576 A.2d at 724. Thus, we find it necessary to consider also whether the imposition of sanctions might, none-the-less, be deemed a proper exercise of the trial court's inherent authority.

■ Apart from the authority granted pursuant to Rule 11, the Superior Court has the inherent authority to award sanctions in appropriate circumstances for intentional abuse of the litigation process. *In re Estate of Delaney,* 819 A.2d 968, 998 (D.C.2003). As the United States Supreme Court explained in *Chambers v. NASCO, Inc.:*

> It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others. For this reason, Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citations and quotations omitted). "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49, 111 S.Ct. 2123; *see also id.* at 50, 111 S.Ct. 2123 ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."); *Delaney, supra,* 819 A.2d at 998 ("[W]hile a court's rules may reach only specified conduct, the court's inherent power fills the gaps."). A court thus may act *sua sponte* to impose sanctions pursuant to its inherent authority even when it may not pursuant to the Rule 11 procedures. *See Chambers, supra,* 501 U.S. at 49, 111 S.Ct. 2123 (discussing the inherent power for *sua sponte* dismissals despite the existence of Rule 41(b) dismissal procedures).

■ Among the sanctions that can be awarded in the exercise of inherent authority are counsel fees. *Id.* at 45, 111 S.Ct. 2123. However, before a trial court can exercise its inherent authority to assess counsel fees, a prerequisite finding must be made: specifically, that a party against whom the fees are assessed has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46, 111 S.Ct. 2123; *Delaney, supra,* 819 A.2d at 998.

■ "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees...." *Chambers, supra,* 501 U.S. at 50, 111 S.Ct. 2123. "[A] party is not to be penalized for maintaining an aggressive litigation posture, nor are good faith assertions of colorable claims or defenses to be discouraged." *Delaney, supra,* 819 A.2d at 998. "[T]he court must scrupulously avoid penalizing a party for a legitimate exercise of the right of access to the courts. For this reason, the standards of bad faith are

necessarily stringent. Under these stringent standards, the awarding of attorneys' fees for bad faith litigation is proper only under extraordinary circumstances or when dominating reasons of fairness so demand." *Id.* (citations and quotations omitted).

 In the present case, the trial court enumerated numerous examples of conduct and written representations that could have justified an assessment of sanctions—some sanctions pursuant to Rule 11, while others available only in the exercise of the court's inherent authority for conduct beyond the reach of the Rule. However, without expressly finding that the appellants acted either "in bad faith, vexatiously, wantonly, or for oppressive reasons," the trial court did not find that appellants acted pursuant to the improper motive necessary for an award of sanctions pursuant to the court's inherent authority. *Chambers, supra,* 501 U.S. at 46, 111 S.Ct. 2123. Bad faith must be distinguished from, for example, negligence or professional incompetence. *Cf. Chevalier, supra* note 2, 576 A.2d at 724 (upholding, as an exercise of inherent authority, sanctions erroneously assessed under Rule 11 because the trial court had expressly found that appellant proceeded in bad faith). Thus, we reverse the award of fee sanctions and remand the case for a finding as to whether appellants acted in bad faith so as to justify sanctions pursuant to the court's inherent authority.

### IV. *Procedural Fairness*

Though we may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge, our authority to do so presupposes that the appellant has suffered no procedural un-

fairness—specifically, that appellant was given notice of the ground upon which the affirmance is proposed and an opportunity to respond thereto. *In re Walker,* 856 A.2d 579, 586 (D.C.2004) (concluding that appellant's lack of notice implicates procedural fairness and precludes affirmance on alternate ground). Because we currently are remanding for additional findings, we do not have to consider the procedural fairness of affirmance on an alternate ground at this juncture.[3]

We do note, however, that appellants had extensive opportunity to defend against sanctions during the trial court's three-day hearing on the matter, regardless of whether the sanctions are based on Rule 11 or inherent authority. Nothing in the record reveals that appellants limited their arguments only to those actions sanctionable under Rule 11; on the contrary, appellants discussed and attempted to justify the entire course of events including the instances of conduct that were only sanctionable in the exercise of the court's inherent authority. Appellants have not suggested any argument or evidence that they would have presented to defend against sanctions pursuant to the court's inherent authority that they have not already presented to defend against Rule 11 sanctions. However, we have no way of knowing the extent of fee sanctions that might properly have been imposed in the exercise of inherent authority. We cannot, under these circumstances, substitute our judgment for what the trial court might have done if a proper analysis had been applied. Accordingly, we hereby reverse the award of fee sanctions and remand the case for an informed exercise of discretion

---

**3.** We leave the possibility of further hearings in the discretionary hands of the trial court

upon remand.

as to the amount, if any, of fee sanctions the trial court may impose.

*Reversed and remanded.*