*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-FM-0737


MARIANNA YEH, APPELLANT,

V.

GARY HNATH, APPELLEE.


Appeal from the Superior Court
of the District of Columbia
(2019-DRB-003969)

(Hon. Darlene M. Soltys, Trial Judge)

(Submitted September 29, 2022                     Decided May 25, 2023)

*Aaron Marr Page* was on the brief for appellant.

*Sogand Zamani* was on the brief for appellee.


Before BECKWITH, EASTERLY, and DEAHL, *Associate Judges*.

EASTERLY, *Associate Judge*: Marianna Yeh sued Gary Hnath in Superior Court for a divorce, asserting that the two were in a common-law marriage.  Mr. Hnath successfully moved for summary judgment and sought sanctions against Ms. Yeh in the form of attorneys' fees.  Citing Super. Ct. Dom. Rel. R. 11 and the court's

inherent authority, the Superior Court granted Mr. Hnath's sanctions motion and ordered Ms. Yeh to pay over $70,000 in fees. On appeal to this court, Ms. Yeh challenges the sanction award as procedurally barred under Rule 11 and otherwise an abuse of the court's discretion to sanction parties for bad-faith litigation. We agree on both grounds and reverse.

## I.     Facts and Procedural History

The following facts derive from the record or were found by the trial court and are uncontested by the parties. Ms. Yeh and Mr. Hnath began a romantic relationship sometime in 2006, while Mr. Hnath was married to another woman. The two purchased a condo in D.C. together, held under both of their names as tenants by the entirety—a form of property reserved for married couples[1]—and Ms. Yeh relocated from Canada to move in with Mr. Hnath. Mr. Hnath and his first wife divorced in 2008, as his relationship with Ms. Yeh continued.

---

[1] *See Roberts & Lloyd, Inc. v. Zyblut*, 691 A.2d 635, 638 (D.C. 1997) ("[O]nly a married couple may be tenants by the entireties . . . ."). *But see Coleman v. Jackson*, 286 F.2d 98, 102 (D.C. Cir. 1960) (holding that "a deed to a man and woman who were not legally married, as tenants by the entireties, was ineffective as to the creation of that tenancy but was effective to create a joint tenancy with right of survivorship").

In the years that followed, Ms. Yeh and Mr. Hnath maintained what was by all appearances a serious relationship. Mr. Hnath listed Ms. Yeh (with her signed approval) on various employer benefit forms and medical records as his "domestic partner," and the two jointly held a sizable investment account. In 2014, the two jointly purchased a luxury car, and in 2016, they purchased a house in D.C. together as joint tenants in fee simple. Both parties presented evidence from friends, relatives, and acquaintances who variously characterized their understanding of the parties' relationship, with descriptions ranging from dating to spousal.

The two never formally registered a domestic partnership[2] or undertook a marriage ceremony, however, and after intermittent "off and on" periods they permanently separated in 2017 or 2018. Mr. Hnath formally married another woman in October 2018, and in early 2019 he stopped making payments on the mortgages and car loans that he shared with Ms. Yeh. At least one of the property mortgages went into default and entered foreclosure proceedings with the mortgage lender, and in August 2019 Mr. Hnath sued Ms. Yeh to partition their jointly owned properties and thereby force their sales.

---

[2] The District of Columbia permits a couple in a non-marital and committed relationship to register as each other's sole domestic partner and thus be entitled to certain legal benefits. D.C. Code § 32-702(a).

Ms. Yeh subsequently filed the complaint underlying this case in November 2019, requesting absolute divorce to dissolve what she alleged was a common-law marriage between herself and Mr. Hnath that began in August 2008.[3]  In her complaint, she alleged that Mr. Hnath had consented to spousal support payments including the payments on their mortgages.  Apparently as a result of Ms. Yeh's divorce action, Mr. Hnath's suit for partition was dismissed.  After Mr. Hnath filed an answer to the divorce complaint, the parties engaged in discovery through 2020 and (because proceedings were significantly delayed due to the COVID-19 pandemic) into 2021.

On January 5, 2021, Mr. Hnath moved to compel discovery and requested sanctions for Ms. Yeh's failure to provide him with a transcript of her October 2018 deposition in an unrelated case in which she had sued a former employer for sexual harassment and other claims.  In this transcript, Ms. Yeh stated at one point that she was not married and later that Mr. Hnath had previously been her "domestic partner . . . [f]rom December 2006 to sometime in . . . the middle of 2017."  Ms. Yeh also therein answered detailed questions about her intimate relationship with another man

---

[3] The date on which Ms. Yeh alleged the common-law marriage commenced shifted repeatedly throughout the litigation, a fact that the trial court accorded significant weight in granting summary judgment against her.

that occurred around 2015. After Mr. Hnath finally obtained a copy of the transcript from a source other than Ms. Yeh, he emailed Ms. Yeh on January 20, 2021,[4] demanding that she withdraw her complaint and declaring he would seek sanctions if she did not do so by noon the following day. As the basis for this demand, Mr. Hnath cited Ms. Yeh's sworn statements that she did not consider herself married to Mr. Hnath when she sat for the deposition in 2018. The email did not have a draft motion for sanctions attached. Nothing in the record indicates that Ms. Yeh responded or that Mr. Hnath took any action the following day.

Nine days later, on January 29, 2021, Mr. Hnath filed a motion entitled as a "Verified Motion for Summary Judgment and for Sanctions." Regarding the request for sanctions, the pleading provided a paragraph summary of the factual basis for such a request, alleging Ms. Yeh had filed her complaint to harass Mr. Hnath and his new wife and that her suit was frivolous in light of the evidence, but it contained no corresponding legal argument. Instead Mr. Hnath stated that his sanctions request, which he indicated would be sought under Rule 11 and the court's inherent authority, would "be presented in a subsequent motion more fully." After further briefing and a hearing regarding whether summary judgment in favor of Mr. Hnath

---

[4] All post-complaint communications between the parties referenced herein took place through counsel.

was warranted, the trial court issued a two-page order on February 27, 2021, and granted judgment to Mr. Hnath, stating that a detailed order would follow. In the same order the court held Mr. Hnath's motion[5] for sanctions in abeyance, stating that it would schedule a hearing "in due course."

The Superior Court subsequently issued a March 23, 2021, order explaining its reasoning for granting summary judgment to Mr. Hnath. The court determined that Ms. Yeh had failed to present any evidence of an express, present-tense mutual agreement between herself and Mr. Hnath that they were married, a requisite element of a common-law marriage in the District as set out in *Gill v. Nostrand*, 206 A.3d 869, 875 (D.C. 2019). The court also reasoned that Ms. Yeh's shifting allegations of the date the marriage began, her own repeated contemporaneous representations that she and Mr. Hnath were "domestic partners," and the lack of evidence of their reputation in the local community as a married couple all weighed against her claim. Lastly, the court observed that Ms. Yeh would have needed to establish that she and

---

[5] The court referred to Mr. Hnath's "motions," plural, apparently because in several pleadings Mr. Hnath filed in January 2021 he had asked the court to award him sanctions in the form of attorneys' fees for Ms. Yeh's conduct during discovery. None of these requests were made in standalone motions for sanctions, however, and the court did not grant any request for fee sanctions prior to the order underlying this appeal.

Mr. Hnath reaffirmed their intent to be married once the legal impediment of Mr. Hnath's first marriage had been removed, but found that she had failed to do so.[6]

On April 28, 2021—two months after the court granted summary judgment— Mr. Hnath filed a standalone motion for sanctions in the form of attorneys' fees, again citing both Super. Ct. Dom. Rel. R. 11 and the court's inherent sanctions authority. Mr. Hnath reiterated his assertions that Ms. Yeh had filed her suit for the bad-faith purposes of harassment and delay as evidenced by the fact that her claims lacked evidentiary basis, and that she had litigated her claim in a bad-faith manner. Ms. Yeh opposed the motion. She argued that Mr. Hnath was not entitled to Rule 11 sanctions because he had not formally served her with a standalone sanctions motion at least 21 days before filing, as required under Rule 11(c)(2). Ms. Yeh denied any improper purpose in filing her divorce suit, asserted she had held a bona fide if misguided belief that she had been in a common-law marriage, and pointed to the evidence she had proffered supporting that belief; Ms. Yeh further argued that

---

[6] This court recently held such a reaffirmation is not necessary if the couple made an initial express agreement of marriage. *See In re Est. of Jenkins*, 290 A.3d 524, 531 (D.C. 2023) ("[W]here a couple makes an express mutual agreement in words of the present tense to be married despite a known or unknown legal impediment to marriage, and that agreement is followed by cohabitation, the couple need not reaffirm their agreement after the impediment to marriage dissolves; they need only continue to cohabit.").

she lacked the financial resources to pay the requested fees.

The court held a hearing at which it heard argument from counsel for and against sanctions and asked Mr. Hnath to submit an affidavit detailing the fees he sought to be awarded. Mr. Hnath submitted an affidavit from counsel seeking an award of $74,227.36. The court then granted Mr. Hnath's motion, ordering Ms. Yeh to pay the full amount of fees claimed. The court found that Mr. Hnath had "shown by clear and convincing evidence that [Ms. Yeh had] brought and litigated her meritless claim in bad faith, such that [it had] the discretion to award attorney's fees under both Rule 11[7] and under its inherent authority to police itself." Observing that Ms. Yeh's "claim that the parties had a common law marriage was uncolorable" and "implausible," the court reasoned that it could

> infer, given the lack of evidence and the surrounding circumstances, that the claim was brought for an improper purpose, namely to harass [Mr. Hnath], for unnecessary delay (to continue to exclusively enjoy use of their jointly held property and interfere with prompt resolution of his complaint for partition and force the sale), and to needlessly increase his litigation expenses, perhaps in hopes of reaching a favorable settlement.

---

[7] Ruling that Mr. Hnath's January 2021 email threatening sanctions effectively served as the notice required by Rule 11(c)(2), the court rejected Ms. Yeh's argument that Mr. Hnath could not avail himself of Rule 11 sanctions because he had failed to follow the rule's requisite procedures.

The court further reasoned that "[n]ot only did [Ms. Yeh] initiate this claim under questionable circumstances, but the litigation tactics used throughout this case appear to have been used to conceal important discovery documents," specifically her 2018 deposition transcript from her separate lawsuit for sexual harassment.[8] Ms. Yeh timely appealed the sanctions order.

## II.     Analysis

In general, parties before the District's courts are responsible for paying the costs and fees that their own attorneys incur during the course of litigation, a practice known as the "American rule." *Synanon Found., Inc. v. Bernstein*, 517 A.2d 28, 35, 37 (D.C. 1986).   This rule aims to avoid chilling possibly meritorious actions, whereas a fee-shifting default might deter a party from ever initiating a claim for fear of being stuck with an unpayable bill should they lose. *See id.* at 36.  We permit departures from the American rule, however, under limited circumstances where the court orders a party to pay their opponent's fees as a sanction for misconduct. *See*

---

[8] While acknowledging in passing Ms. Yeh's argument that the requested fees were "unnecessarily high," the court concluded that it was within its discretion to award Mr. Hnath the full amount, reiterating its view that Ms. Yeh had acted in bad faith.  The court did not address Ms. Yeh's repeated assertions of her limited ability to pay or state that it considered other factors in determining the proper amount of fees to award.  But see *infra* note 16.

*id.* at 36-37. Some of these circumstances are defined by court rule, *see, e.g.*, Super. Ct. Dom. Rel. R. 11(c)(2), 16(e)(2), 30(d)(2), 37(a)(5)(A), while in other circumstances courts may rely on their inherent authority to manage court affairs, including the conduct of parties, see *infra* Section II.B.

Whichever authority a court relies on to impose a fee-shifting sanction, this court reviews the sanction order for an abuse of discretion. *In re Jumper* (*Jumper I*), 909 A.2d 173, 175 (D.C. 2006). But in conducting our review we recognize that the trial court's discretion over sanctions is not unbounded; its exercise "must rest on correct legal principles, and a discretionary decision based on an erroneous premise cannot stand." *Id.* (cleaned up). The court indicated two sources of authority for its sanctions order in this case. We consider each in turn.

## A. Rule 11 Sanctions

Super. Ct. Dom. Rel. R. 11(b) directs that pleadings and other papers must be submitted for a proper purpose, nonfrivolous, and supported by evidence or likely to be so after investigation. If a party believes their opponent has violated that directive, then they may move for sanctions, but under the rule such motions must comply with several procedural requirements. The party accused of misconduct

must be given "notice and a reasonable opportunity to respond." Super. Ct. Dom. Rel. R. 11(c)(1). Further, a motion for sanctions "must be made separately from any other motion" and "must be served under Rule 5, but it must not be filed with or presented to the court if the challenged . . . claim . . . is withdrawn or appropriately corrected within 21 days after service." Super. Ct. Dom. Rel. R. 11(c)(2). The requirement that a party be allowed 21 days to address any deficiencies is known as Rule 11's "safe harbor" provision.[9] "The purpose of the 'safe harbor' provision is to give an opposing party the opportunity to admit candidly that it cannot support its contention, and withdraw that position before the Rule 11 motion has been filed with the court." *Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*, 935 A.2d 362, 378 (D.C. 2007) (internal quotation marks omitted). Compliance with the safe harbor provision is "required" for that party to be awarded Rule 11 sanctions. *Id.* at 378-79.

The Superior Court determined that Mr. Hnath effectively complied with the safe harbor requirement when he emailed Ms. Yeh declaring he would seek sanctions by noon the next day, several months before he filed his standalone

---

[9] Our cases engaging with the safe harbor provision do so almost exclusively in the context of Super. Ct. Civ. R. 11(c)(2); because that provision is "functionally identical" to Super. Ct. Dom. Rel. R. 11(c)(2), we apply those precedents here. *See In re S.U.*, No. 22-FS-569, 2023 WL 2920926, at *2 (D.C. Apr. 13, 2023).

sanctions motion, which itself postdated the court's summary judgment ruling. In making this determination, the court cited one case, *United States v. BCCI Holdings (Luxembourg), S.A.*, 176 F.R.D. 1, 2 (D.D.C. 1997), in which the federal trial court stated that it "might have construed" a letter indicating an intent to file a motion for sanctions as satisfying the safe harbor provision under the federal analogue to Rule 11 had the letter been differently worded. But this unpublished and in any event nonbinding ruling is contrary to this court's express holding that "a letter informing opposing counsel of an intention to pursue sanctions is not the functional equivalent of actual service of the Rule 11 motion." *Goldberg. Marchesano. Kohlman. Inc. v. Old Republic Sur. Co.*, 727 A.2d 858, 864 (D.C. 1999). Therefore, Mr. Hnath's January 20, 2021, email could not satisfy the requirements of Rule 11 as a matter of law, and the trial court's conclusion to the contrary was in error.

Although the trial court did not consider Mr. Hnath's subsequent actions, he argues in his brief to this court that those actions fulfilled the procedural requirements of Rule 11. Mr. Hnath's motion for summary judgment and sanctions did not satisfy Rule 11 in two respects: it was not a standalone motion for sanctions, and it was not served on Ms. Yeh 21 days before it was filed. *See* Super. Ct. Dom. Rel. R. 11(c)(2). And Mr. Hnath's standalone motion for sanctions—yielding the order underlying this appeal—was also not served on Ms. Yeh 21 days in advance

of filing and was filed only after the court had granted summary judgment, thus making it impossible for Ms. Yeh to take corrective action and abandon her suit even if she had been given the requisite 21 days to do so. *See Goldschmidt*, 935 A.2d at 379 ("A party cannot initiate the Rule 11 process after judgment has been entered.").

We conclude that, because the trial court erroneously concluded that Mr. Hnath complied with the mandatory terms of Rule 11, the court abused its discretion in granting Mr. Hnath's motion for sanctions thereunder.

### B. Sanctions Under the Court's Inherent Authority

The rules of procedure aside, the trial court also holds the power to grant attorneys' fees to an opposing party as part of its "inherent authority to award sanctions in appropriate circumstances for intentional abuse of the litigation process." *Jumper I*, 909 A.2d at 176. We have referred to this exception to the default American rule as the "bad-faith exception." *See Synanon*, 517 A.2d at 37. To assess attorneys' fees under this exception, the court must first make a finding that the sanctioned party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," *Jumper I*, 909 A.2d at 176 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)), by clear and convincing evidence, *In re Jumper* (*Jumper II*), 984

A.2d 1232, 1247-48 (D.C. 2009); *see also Jung v. Jung*, 844 A.2d 1099, 1108 (D.C. 2004) (placing this "heavy burden" on the party seeking sanctions). We review this predicate finding of bad faith for clear error. *Jumper II*, 948 A.2d at 1247.

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *In re M.L.P.*, 936 A.2d 316, 323 (D.C. 2007) (quoting *Chambers*, 501 U.S. at 44). Consequently, this court's decisions have urged "caution" and "circumspection" before courts exercise their inherent authority to award attorneys' fees, in order to safeguard the right of access to the courts. *Jumper I*, 909 A.2d at 176 (quoting *Chambers*, 501 U.S. at 50); *Jumper II*, 984 A.2d at 1248 (quoting *Jung*, 844 A.2d at 1108). We have emphasized that the standard for the bad-faith exception is "necessarily stringent," such that a fee-shifting sanction is "proper only under extraordinary circumstances or when dominating reasons of fairness so demand." *Jumper I*, 909 A.2d at 176-77 (quoting *In re Est. of Delaney*, 819 A.2d 968, 998 (D.C. 2003)); *accord Synanon*, 517 A.2d at 37 (collecting cases). And we have said that "the court must scrupulously avoid penalizing litigants for aggressively litigating their claims or discouraging good faith assertions of colorable claims and defenses." *Jung*, 844 A.2d at 1108. Rather, the sanctioned party's conduct "must be so egregious that fee shifting becomes warranted as a matter of equity." *Id.* at 1107. Applying this standard, we have recognized that a party proved

bad faith by clear and convincing evidence only in a limited set of scenarios: where a lawyer knowingly violated the rules of professional conduct,[10] a party committed a fraud upon the court in the course of litigation,[11] a party wantonly failed to comply with a final court order,[12] or a party's claim had "no basis whatever in the evidence to support it" and was admittedly brought for coercive purposes.[13]

The Superior Court concluded that Ms. Yeh "lacked a good faith basis to even

---

[10] *Jumper II*, 984 A.2d at 1249-50.

[11] *In re S.U.*, 2023 WL 2920926, at *2-3 (affirming sanctions against parties who had "committed a fraud upon the [c]ourt, perjured themselves . . . , and attempted to use [the court's] authority to circumvent" a final court order in order to kidnap children (brackets omitted)); *Breezevale Ltd. v. Dickinson*, 879 A.2d 957, 961 (D.C. 2005) (affirming sanction against a party who was "found to have forged documents . . . and then steadfastly lied about it"); *Jemison v. Nat'l Baptist Convention, USA, Inc.*, 720 A.2d 275, 281, 287 (D.C. 1998) (affirming sanction against a party who "was actively involved in the submission of forged documents to the court" in a "collusive lawsuit"); *Chevalier v. Moon*, 576 A.2d 722, 724 (D.C. 1990) (affirming sanctions against a party who admitted to making false statements under oath); *Synanon*, 517 A.2d at 32, 42 (affirming sanctions against a party that had, among other misconduct, been "systematically destroying potential trial evidence" subject to discovery that "culminat[ed] with calculated perjury").

[12] *D.C. Dep't of Pub. Works v. D.C. Off. of Hum. Rts.*, 195 A.3d 483, 500-01 (D.C. 2018).

[13] *Gen. Fed'n of Women's Clubs v. Iron Gate Inn, Inc.*, 537 A.2d 1123, 1127 (D.C. 1988); *id.* at 1129 (noting the sanctioned party's representative stated at a hearing that she would only withdraw her claim if the other party withdrew their counterclaim).

bring her lawsuit." Ms. Yeh's case was undoubtedly meritless—indeed, as the trial court assessed, it "was not a close call." But a claim need not be meritorious to avoid a bad-faith finding; it need only be colorable, a measure that is satisfied "when it has *some* legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Jung*, 844 A.2d at 1108 (emphasis added and internal quotation marks omitted). As summarized above, the record contains some evidence that she and Mr. Hnath had a serious, long-lasting romantic relationship featuring many of the functional hallmarks of marriage—for example, co-habitation, joint property ownership, comingled finances, and some (admittedly mixed) evidence that the two presented to others as husband and wife.[14] Facts like these can provide support for a claim of common-law marriage. *See, e.g.*, *Gill*, 206 A.3d at 875 (naming evidence of durable cohabitation and the general reputation of the relationship among relatives and acquaintances as factors to weigh in a common-law marriage analysis). To be clear, moderately diligent research by Ms. Yeh's counsel would have shown that her evidence did not prove the required assertion of an express mutual agreement, but "[b]ad faith must be distinguished from, for example, negligence or professional incompetence." *See Jumper I*, 909 A.2d at 177. The legal shortcomings of her claim notwithstanding, given the evident serious

---

[14] Some record evidence even suggests the existence of a child bearing both of their last names whom they considered part of their family.

relationship between the parties, we cannot say on this record it was unreasonable for Ms. Yeh to believe in good faith that her relationship with Mr. Hnath merited legal recognition as a common-law marriage. *See McCoy v. District of Columbia*, 256 A.2d 908, 910 (D.C. 1969) (noting that the concept of common-law marriage is "almost uniformly misunderstood").

Moreover, it is not enough for a defendant seeking sanctions from the initiation of an action to establish that a plaintiff's claim was "entirely without color" when brought; they must also establish by clear and convincing evidence that it was "asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Jumper II*, 984 A.2d at 1248. This language resembles in part that of Rule 11(b)(1), and indeed we have acknowledged that the court's inherent sanctions authority can overlap with and fill gaps in the sanctions provided by rule, *see, e.g.*, *Jumper I*, 909 A.2d at 176; *Delaney*, 819 A.2d at 998, but the absence of the associated procedural protections that the rules provide suggests a higher degree of bad faith in a party's purpose must be shown. Here, we are not persuaded that the fact that Ms. Yeh had repeatedly represented her relationship with Mr. Hnath as a "domestic partnership" itself establishes her bad-faith purpose under this standard. A layperson might reasonably understand that she had never participated in a marriage ceremony and thus disclaim any *formal* marriage on official documents,

and yet come to believe that the qualities of her relationship might under law constitute a *common-law* marriage. Without proof that she knew her claim was baseless when she filed it, Ms. Yeh's claim was not so "entirely without color" as to give rise to an inference that she filed her claim "wantonly" or otherwise in bad faith. *See Delaney*, 819 A.2d at 999 (internal quotation marks omitted) ("Sanctions should not be imposed unless it is patently clear that a claim had absolutely no chance of success prior to filing." (cleaned up)).

Nor do we discern clear and convincing evidence to support the court's inference that Ms. Yeh's complaint was filed "for the improper purpose of harassing [Mr. Hnath] and delaying resolution" of Mr. Hnath's partition action. The timing of the divorce complaint does suggest that Ms. Yeh filed it in reaction to Mr. Hnath's partition suit, but this does not itself sufficiently evince a purpose to harass or improperly delay. It seems entirely plausible that the question of any lasting legal effects of her relationship with Mr. Hnath had not been relevant to Ms. Yeh prior to the partition suit, and Ms. Yeh could have reasonably, and perhaps justifiably, feared the loss of the properties Mr. Hnath sought to partition, given the indications in the record that she used them as her primary residences. Seeking to protect a potentially valid property interest at stake in another action is not an improper purpose that might justify a bad-faith sanction. The other evidence the court cites of Ms. Yeh's

improper purpose—text messages from Ms. Yeh from February 2015 and October 2018 suggesting her desire for relationships with wealthy men and animosity toward Mr. Hnath and his new wife, respectively—both well predate her complaint and shed little, if any, light on this lawsuit. "The truth is that litigation often is brought for a host of purposes," and the record lacks clear and convincing evidence that here Ms. Yeh's predominant motive was an egregiously improper one. *See Jung*, 844 A.2d at 1112 ("We do not comprehend the bad faith exception to the American rule to allow the trial judge to sanction litigants for bringing colorable claims when they also happen to have other ulterior motives of questionable propriety.").

Finally, the court concluded that Ms. Yeh litigated her suit in a bad-faith manner. It drew this conclusion primarily on the basis of Ms. Yeh's apparent delays in disclosing the transcript of her 2018 deposition testimony in the unrelated sexual harassment lawsuit. Ms. Yeh, through counsel, did resist turning over the transcript in question, but she represented that her reluctance was due to her desire to avoid violating a protective order issued in that case that rendered some of the transcripts confidential. That position was not so far beyond plausible that it was a clear smokescreen for improper delay. We also think the Superior Court's assessment that the transcript would have "devastated" her claim is somewhat of an overstatement. Ms. Yeh's transcribed admission that she and Mr. Hnath were not

married, in the context of a case where the legal status of her relationship with Mr. Hnath was not at issue, is no doubt adverse evidence in her later suit, but is not clear and convincing evidence that her suit was, as Mr. Hnath argued, a "shakedown"— and her admission that she and Mr. Hnath had been "domestic partners" was not remarkably different from other evidence already in the record of similar representations from both parties.

The court additionally identified Ms. Yeh's otherwise deficient discovery responses and her successive motions for pendente lite relief as evidence of bad faith. It is evident that Ms. Yeh's discovery responses were not always fully forthcoming, requiring repeated exhortations from Mr. Hnath for supplementary responses. But her conduct in discovery appears within the realm of quotidian guardedness and noncompliance, not evidence of the "deliberate oppressiveness" that would merit bad-faith sanctions. *See Schlank v. Williams*, 572 A.2d 101, 111 (D.C. 1990). And while the court emphasized Ms. Yeh's repeated filing of four motions for pendente lite relief, we can identify only two, with an additional related motion for reconsideration when the first was held in abeyance.[15] Ms. Yeh clearly stated in her second motion that she was renewing her efforts to secure alimony pending litigation

---

[15] Ms. Yeh also filed a brief supplement to her motion for reconsideration including her financial information.

because her financial circumstances had changed following her loss of employment; this solitary successive filing based on a change in circumstances likewise cannot reasonably be said to be an abuse of the judicial system.

In sum, we cannot discern clear and convincing evidence in the record that Ms. Yeh's actions in pursuing her case remotely resembled conduct we have previously affirmed as sanctionable. She perpetrated no flagrant fraud on the court, she did not wantonly disobey its orders, and she did not knowingly violate any professional ethical duties. Although we do not condone Ms. Yeh's apparently half-hearted approach to the discovery process, her behavior overall appears of a kind with that of countless litigants in our courts who bring ill-supported claims under acrimonious conditions and ultimately lose on the merits—and far from the extraordinary circumstances or egregious misconduct that would justify invocation of the bad-faith exception. We conclude that the trial court's finding of bad faith was clearly erroneous and consequently that the court abused its discretion in sanctioning Ms. Yeh under its inherent authority.[16]

---

[16] In her brief to this court, Ms. Yeh does not contest the trial court's determination that she should pay the entirety of the claimed fees and not some lesser amount—and our conclusion that the court was without basis to sanction Ms. Yeh for her conduct would moot the inquiry even if it had been raised. But we note that we have previously stated the following, in the context of Rule 11 sanctions:

## III.  Conclusion

For the foregoing reasons, the judgment of the Superior Court granting monetary sanctions against Ms. Yeh is reversed.

*So ordered.*

---

> In imposing a monetary sanction, the trial court should expressly consider at least four factors, all of which serve to limit the amount assessed: (1) the reasonableness of the injured party's attorneys' fees . . . ; (2) the minimum amount that will serve to adequately deter the undesirable behavior; (3) the offending party's ability to pay, bearing in mind that sanctions should not be so large as to bankrupt the offending party . . . or otherwise cause the offending party great financial distress; and (4) the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances.

*Williams v. Bd. of Trs. of Mount Jezreel Baptist Church*, 589 A.2d 901, 911-12 (D.C. 1991) (cleaned up).  The trial court in this case did not engage in any such express analysis.